1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7    KRISTY JIMENEZ, an individual,

8                        Plaintiff,            NO. 1:21-CV-3128-TOR

9         v.                                   ORDER GRANTING STATE
                                               DEFENDANTS' MOTION TO
10   SERVICE EMPLOYEES                         DISMISS AND GRANTING UNION
     INTERNATIONAL UNION LOCAL                 DEFENDANTS' MOTION FOR
11   775, a local chapter of an                JUDGMENT ON THE PLEADINGS
     unincorporated labor organization;
12   SERVICE EMPLOYEE
     INTERNATIONAL UNION, an
13   unincorporated labor organization;
     DON CLINTSMAN, in his official
14   capacity as ACTING SECRETARY
     of the WASHINGTON STATE
15   DEPARTMENT OF SOCIAL AND
     HEALTH SERVICES; JAY INSLEE,
16   in his official capacity as
     GOVERNOR of the STATE OF
17   WASHINGTON,

18                        Defendants.

19

20

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 1

1    BEFORE THE COURT are State Defendants' Motion to Dismiss (ECF No.

2    20) and Union Defendants' Motion for Judgment on the Pleadings (ECF No. 22).

3    These matters were submitted for consideration without oral argument.  The Court

4    has reviewed the record and files herein and is fully informed.  For the reasons

5    discussed below, State Defendants' Motion to Dismiss (ECF No. 20) and Union

6    Defendants' Motion for Judgment on the Pleadings (ECF No. 22) are GRANTED.

7                                **BACKGROUND**

8        This matter arises from the unauthorized deduction of union dues payments

9    from Plaintiff Kristy Jimenez's paychecks.  The following facts are drawn from

10   Plaintiff's Complaint and construed in the light most favorable to Plaintiff.

11   *Schwarz v. United States*, 234 F.3d 428, 436 (9th Cir. 2000).

12       Plaintiff works as an Individual Provider ("IP"), providing in-home

13   healthcare services for three members of her family.  ECF No. 1 at 1, ¶ 1.  Plaintiff

14   is employed by the Washington Department of Social and Health Services

15   ("DSHS").  *Id*.  Defendants Governor Inslee, as chief executive officer of the State

16   of Washington, and Don Clintsman, as acting Secretary of DSHS (collectively

17   "State Defendants"), receive federal funding that is used to pay for IPs' salaries,

18   including Plaintiff's.  *Id*. at 6, ¶¶ 30–31.  The IPs are paid through a state payroll

19   processing system.  *Id*. at ¶ 32.

20

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 2

Defendant Service Employees International Union Local 775 ("SEIU 775") is the exclusive bargaining representative for all IPs in Washington State. *Id*. at 5, ¶ 19. Under the relevant collective bargaining agreement and RCW 41.80.100, State Defendants, as the IPs' employer, agreed to deduct union dues from the IPs' wages. *Id*. at 7, ¶ 36; at 17, ¶ 117. State Defendants rely exclusively on the representations from SEIU 775 when determining from whom to withhold dues payments; State Defendants do not confirm the withholding authorizations from IPs. *Id*. at 7, ¶¶ 41–42. The dues are used, in part, to pay for contributions to SEIU 775's Committee on Political Education ("COPE"), a federal political action committee. *Id*. at 8, ¶¶ 47–48.

In 2019, Plaintiff became aware that union dues were being withheld from her wages. *Id*. at ¶¶ 52–53. The deductions had been occurring since 2016 and continued through May 2021. *Id*. at ¶¶ 52, 54. Plaintiff did not recall signing up for a union membership. *Id*. at 9, ¶ 55. In December 2019, Plaintiff filled out a form and mailed it to SEIU 775 to cancel her union membership. *Id*. at ¶ 58. After receiving no response from SEIU 775, Plaintiff mailed a second form in September 2020. *Id*. at ¶ 63. Plaintiff also emailed SEIU 775's Member Resource Center in September 2020, requesting a copy of her union membership or dues deduction authorizations. *Id*. at 10, ¶ 65. Plaintiff received an email response two days later requesting additional information from Plaintiff; on that same day, Plaintiff also

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ~ 3

received a letter from SEIU 775 acknowledging her membership resignation. *Id*. at ¶¶ 69–70.

In October 2020, Plaintiff again requested a copy of her union membership. *Id*. at 11, ¶ 74. Plaintiff received a copy of her membership agreement in March 2021. *Id*. at ¶ 78. The membership card reflected Plaintiff's name digitally filled in at the top and a digital signature in Plaintiff's name authorizing dues deductions and COPE contributions. *Id*. at ¶ 79. The IP address located next to the digital signature belonged to a server located in Seattle, Washington. *Id*. at 12, ¶ 81. The signature was dated August 19, 2016. *Id*. at ¶ 80. Plaintiff did not electronically sign the membership agreement nor was she in Seattle in August 2016. *Id*. at ¶ 84.

In the motions presently before the Court, State Defendants move for dismissal of all counts asserted against them. ECF No. 20. Union Defendants seek judgment on the pleadings or, in the alternative, partial summary judgment. ECF No. 22.

## DISCUSSION

### I.    State Defendants' Motion to Dismiss

A motion to dismiss for failure to state a claim "tests the legal sufficiency" of the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To withstand dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ~ 4

1    (2007).  "A claim has facial plausibility when the plaintiff pleads factual content

2    that allows the court to draw the reasonable inference that the defendant is liable

3    for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

4    omitted).  This requires the plaintiff to provide "more than labels and conclusions,

5    and a formulaic recitation of the elements."  *Twombly*, 550 U.S. at 555.  While a

6    plaintiff need not establish a probability of success on the merits, he or she must

7    demonstrate "more than a sheer possibility that a defendant has acted unlawfully."

8    *Iqbal*, 556 U.S. at 678.

9        When analyzing whether a claim has been stated, the Court may consider the

10   "complaint, materials incorporated into the complaint by reference, and matters of

11   which the court may take judicial notice."  *Metzler Inv. GMBH v. Corinthian*

12   *Colleges, Inc*., 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs, Inc. v. Makor*

13   *Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007)).  A complaint must contain "a

14   short and plain statement of the claim showing that the pleader is entitled to relief."

15   Fed. R. Civ. P. 8(a)(2).  A plaintiff's "allegations of material fact are taken as true

16   and construed in the light most favorable to the plaintiff[,]" however "conclusory

17   allegations of law and unwarranted inferences are insufficient to defeat a motion to

18   dismiss for failure to state a claim."  *In re Stac Elecs. Sec. Litig*., 89 F.3d 1399,

19   1403 (9th Cir. 1996) (citation and brackets omitted).

20       In assessing whether Rule 8(a)(2) has been satisfied, a court must first

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 5

1    identify the elements of the plaintiff's claim(s) and then determine whether those

2    elements could be proven on the facts pled.  The court may disregard allegations

3    that are contradicted by matters properly subject to judicial notice or by exhibit.

4    *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The court

5    may also disregard conclusory allegations and arguments which are not supported

6    by reasonable deductions and inferences.  *Id*.

7         The Court "does not require detailed factual allegations, but it demands

8    more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*,

9    556 U.S. at 662.  "To survive a motion to dismiss, a complaint must contain

10    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

11    on its face.'"  *Id*. at 678 (citation omitted).  A claim may be dismissed only if "it

12    appears beyond doubt that the plaintiff can prove no set of facts in support of his

13    claim which would entitle him to relief."  *Navarro*, 250 F.3d at 732.

14    **A.  Standing to Seek Prospective Relief**

15         State Defendants move for dismissal of Plaintiff's claims for injunctive and

16    declaratory relief on the grounds that Plaintiff lacks standing to seek prospective

17    relief.  ECF No. 20 at 6–9.  Plaintiff's Complaint seeks declaratory relief as to her

18    First Amendment rights and injunctive relief against State Defendants to prevent

19    their reliance on the representations of SEIU 775 for dues withholding.  ECF No. 1

20    at 25–26, ¶¶ 167–170.

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 6

Article III standing requires a plaintiff to demonstrate three elements: (1) plaintiff must have suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) there must be a causal connection between the injury and the challenged conduct that is fairly traceable to the defendant's actions; and (3) it must be "likely" as opposed to "speculative" that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Injunctive relief is premised on a showing of repeated injury or future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983). Declaratory relief requires evidence that the declaration being sought will remedy the alleged harm. *Mayfield v. United States*, 599 F.3d 964, 971–72 (9th Cir. 2010). Neither injunctive nor declaratory relief may be premised on past harm. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Counts I and II of the Complaint allege State Defendants violated Plaintiff's First and Fourteenth Amendment rights by failing to exercise proper oversight of the dues collection system, which forced Plaintiff to participate in political speech. ECF No. 1 at 15–18, ¶¶ 103–123. Plaintiff concedes her dues deductions ceased in May 2021 and that she received confirmation from the union regarding her membership resignation. *Id*. at 8, ¶ 54; at 10, ¶ 70. Thus, at the time the Complaint was filed in September 2021, Plaintiff was no longer a member of SEIU 775 or subject to the dues deductions. Plaintiff's responsive pleading to the

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ~ 7

1   present motion does not allege the dues deductions have resumed.  Rather, Plaintiff

2   claims she is still under threat of harm because "it is only the State's discretion and

3   the Union's obeyance of the law that prevent the recommencement of dues

4   deductions."  ECF No. 24 at 12.  Plaintiff does not present any facts from which

5   the Court could infer State Defendants are likely to resume deducting dues from

6   Plaintiff's wages.  Plaintiff's claim is purely speculative and unsupported, and it is

7   insufficient to establish a harm that is actual or imminent.  *See Schumacher v.*

8   *Inslee*, 474 F. Supp. 3d 1172, 1175 (W.D. Wash. 2020); *Semerjyan v. Serv. Emps.*

9   *Int'l Union Loc. 2015*, 489 F. Supp. 3d 1048, 1060 (C.D. Cal. 2020).  Plaintiff has

10  failed to state a claim upon which injunctive relief may be granted.

11       Plaintiff also seeks a declaration that the alleged scheme between State and

12  Union Defendants described in Counts I and II is unconstitutional.  ECF No. 1 at

13  25, ¶¶ 167–169.  The Declaratory Judgment Act permits courts to "declare the

14  rights and other legal relations" of the parties involved in "a case of actual

15  controversy."  28 U.S.C. § 2201.  The requirement of a "case of actual

16  controversy" under the Act is no more than what the Constitution otherwise

17  requires.  *United Food & Com. Workers Loc. Union Nos. 137, 324, 770, 899, 905,*

18  *1167, 1222, 1428, & 1442 v. Food Emps. Council, Inc.*, 827 F.2d 519, 523 n.3 (9th

19  Cir. 1987).  Thus, a plaintiff must allege facts that, "under all the circumstances,

20  show that there is a substantial controversy, between parties having adverse legal

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 8

1    interests, of sufficient immediacy and reality to warrant the issuance of a

2    declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127

3    (2007).

4         As previously noted, Plaintiff successfully withdrew her union membership,

5    and State Defendants' automatic withdraw of dues payments ceased in May 2021.

6    ECF No. 1 at 8, ¶ 54; at 10, ¶ 70.  Thus, any actual controversy between Plaintiff

7    and State Defendants ended in May 2021.  Plaintiff may not seek declaratory relief

8    for an allegedly unconstitutional scheme to which she is no longer a party.

9         The Court finds Plaintiff has failed to allege any claims upon which

10   injunctive or declaratory relief may be granted.

11        **B.  Section 1983 Liability; Eleventh Amendment Immunity**

12        State Defendants seek dismissal of Plaintiff's claim for damages under

13   Count I on the premises that State Defendants are not "persons" for the purposes of

14   a § 1983 claim and the Eleventh Amendment shields State Defendants from suit.

15   ECF No. 20 at 9–11.  Although the Complaint specifically seeks nominal, general,

16   and punitive damages for violations of Plaintiff's constitutional rights under § 1983

17   (ECF No. 1 at 26, ¶¶ 171, 175), Plaintiff now states she seeks only prospective

18   relief against State Defendants acting in their official capacities for the § 1983

19   claim.  ECF No. 24 at 15–19.

20        To assert a claim under § 1983, a complaint must allege (1) the conduct

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 9

complained of was committed by a person acting under the color of state law, and that (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*; *Daniels v. Williams*, 474 U.S. 327 (1986). States and state officials acting in their official capacities are not "persons" for the purposes of damages under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). However, a plaintiff may seek prospective relief under § 1983 against state officials acting in their official capacity. *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997)

Here, Plaintiff seeks relief against Defendants Don Clintsman and Governor Jay Inslee acting in their official capacities. ECF No. 1. These individuals are not "persons" for the purposes of a damages claim under § 1983. *Will*, 491 U.S. at 66. In any event, Plaintiff now appears to renounce any damage claims arising under § 1983. ECF No. 24 at 15–19. Having determined Plaintiff failed to state cognizable claims for declaratory or injunctive relief under Counts I and II, her claims for prospective relief pursuant to § 1983 also fail. The Court need not reach the issue of Eleventh Amendment immunity.

Based on the foregoing, the Court finds Plaintiff has failed to state claims against State Defendants upon which relief may be granted. Accordingly, the federal claims asserted against State Defendants in Counts I and II are dismissed.

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ~ 10

1    Because amendment would be futile, the claims are dismissed with prejudice.

2    **II.      Union Defendants' Motion for Judgment on the Pleadings**

3            "After the pleadings are closed—but early enough not to delay trial—a party

4    may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  In reviewing a

5    12(c) motion, the court "must accept all factual allegations in the complaint as true

6    and construe them in the light most favorable to the non-moving party."  *Fleming*

7    *v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  "Analysis under Rule 12(c) is

8    substantially identical to analysis under Rule 12(b)(6) because, under both rules, a

9    court must determine whether the facts alleged in the complaint, taken as true,

10   entitle the plaintiff to a legal remedy."  *Chavez v. United States*, 683 F.3d 1102,

11   1108 (9th Cir. 2012) (internal quotation marks and citation omitted).  "A judgment

12   on the pleadings is properly granted when, taking all the allegations in the non-

13   moving party's pleadings as true, the moving party is entitled to judgment as a

14   matter of law."  *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620,

15   623 (9th Cir. 2012) (quoting *Fajardo v. Cty. of Los Angeles*, 179 F.3d 698, 699

16   (9th Cir. 1999)).

17           "Federal pleading rules call for 'a short and plain statement of the claim

18   showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do

19   not countenance dismissal of a complaint for imperfect statement of the legal

20

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 11

theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (citation omitted).

### A.  State Action Under § 1983

Union Defendants move for judgment on the pleadings as to Counts I and II on the grounds that SEIU 775 and SEIU International are not state actors and their actions do not constitute state action.  ECF No. 22 at 12–17.  Count I of the Complaint alleges Union Defendants, acting under the color of state law, violated Plaintiff's First and Fourteenth Amendment rights under 42 U.S.C. § 1983 by forging her signature on union membership cards.  ECF No. 1 at 15–17, ¶¶ 103–115.  Count II of the Complaint alleges Union Defendants participated in a dues extraction scheme with State Defendants to violate Plaintiff's First and Fourteenth Amendment rights.  *Id.* at 17–18, ¶¶ 116–123.

To state a claim under § 1983, Plaintiff must allege the Union Defendants "acted under color of state law" to deprive Plaintiff of a right secured by the Constitution.  *Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020).  Because Union Defendants are private actors, the Court must determine whether "the challenged conduct that caused the alleged constitutional deprivation [is] fairly attributable to the state."  *Id.* at 946.  The Ninth Circuit employs a two-prong analysis to determine whether the conduct is state action.  *Id.*  Under the "state policy" prong, the court will consider whether the claimed constitutional deprivation resulted

from "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id*. (citing *Naoko Ohno v. Uko Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013)) (internal quotations omitted); *Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989). Under the "state actor" prong, the court will consider "whether the party charged with the deprivation could be described in all fairness as a state actor." *Belgau,* 975 F.3d at 946 (quoting *United Steelworkers of Am. V. Sadlowski*, 457 U.S. 102, 121 n.16 (1982)); *Collins*, 878 F.2d at 1151.

As to the first prong, where a purported state actor acts contrary to, or misuses, a state law, the conduct cannot be attributed to any governmental decision. *Lugar v. Edmondson Oil Co., Inc*., 457 U.S. 922, 941 (1982). Here, Plaintiff claims that by following the state law that permits the withdrawal of dues from union members' paychecks, Union Defendants exploited Plaintiff's First and Fourteenth Amendment rights. ECF No. 25 at 14. Plaintiff's argument is unpersuasive. The crux of Plaintiff's litigation is the use of her forged signature to withdraw union dues. State law permits the withdrawal of union membership dues upon authorization from union members; it does not permit unions to forge signatures. RCW 41.56.113; 41.80.100. Thus, it cannot be fairly said that Union Defendants were acting pursuant to a state policy when they forged Plaintiff's signature and impermissibly deducted dues payments from Plaintiff's paychecks.

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ~ 13

1  Plaintiff has failed to allege any additional facts that would permit the Court to

2  infer Union Defendants were acting pursuant to some other state policy when they

3  authorized dues withdrawals based on a forged signature.

4       Plaintiff's claims also fail to satisfy the state actor prong of the analysis.

5  Plaintiff alleges Union Defendants acted jointly with State Defendants to violate

6  her constitutional rights.  ECF No. 25 at 15.  In evaluating this prong, the Ninth

7  Circuit considers whether "the government either (1) affirms, authorizes,

8  encourages, or facilitates unconstitutional conduct through its involvement with a

9  private party, or (2) otherwise has so far insinuated itself into a position of

10  interdependence with the non-governmental party, that it is recognized as a joint

11  participant in the challenged activity."  *Belgau*, 975 F.3d at 947 (internal

12  quotations omitted).  Neither situation is present here.

13       First, Washington State does not participate in the parties' bargaining

14  process.  "Although Washington was required to enforce the membership

15  agreement by state law, it had no say in shaping the terms of that agreement."  *Id*.

16  Thus, Washington's role in the dues deduction process is purely ministerial.

17  Merely carrying out the administrative tasks of the agreement does not render

18  Washington State and Union Defendants joint actors.  *Id*. at 948.  Moreover,

19  Washington State has not insinuated itself into a position of interdependence with

20  Union Defendants.  "A merely contractual relationship between the government

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 14

1  and the non-governmental party does not support joint action; there must be a

2  symbiotic relationship of mutual benefit and substantial degree of cooperative

3  action." *Id.* (internal quotations omitted).  Washington receives no benefit from its

4  administrative role; all dues collected from union members' pay checks are passed

5  to Union Defendants and the State keeps nothing for itself.  Finally, Washington

6  State and Union Defendants sit on opposite sides of the bargaining table; such an

7  adversarial relationship can hardly be categorized as having a substantial degree of

8  cooperation.  *See Belgau,* 975 F.3d at 948.  Plaintiff has not alleged facts from

9  which the Court can infer that Union Defendants were state actors in the dues

10  deduction process.

11      Plaintiff has failed to establish Union Defendants' actions are attributable to

12  a state policy or that Unions Defendants acted as state actors.  Accordingly, Union

13  Defendants are entitled to judgment on the pleadings as to Counts I and II.

14  **B.  RICO**

15      Union Defendants move for judgment on the pleadings as to Count IV on the

16  grounds that Plaintiff has failed to sufficiently allege either wire fraud as a

17  predicate act or the existence of an enterprise to maintain a RICO claim.  ECF No.

18  22 at 18.  Count IV of the Complaint alleges Union Defendants violated 18 U.S.C.

19  § 1964 by sending forged signatures through email and then deducted dues

20  payments based on the fraudulent signatures.  ECF No. 1 at 21, ¶¶ 139–160.

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 15

1    "The elements of a civil Racketeer Influenced and Corrupt Organization Act

2    ("RICO") claim are as follows: (1) conduct (2) of an enterprise (3) through a

3    pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to

4    plaintiff's business or property."  *United Bhd. of Carpenters & Joiners of Am. v.*

5    *Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014).  The

6    predicate act must be both the actual and proximate cause of the alleged injury.

7    *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010).  "Rule 9(b)'s

8    requirement that '[i]n all averments of fraud or mistake, the circumstances

9    constituting fraud or mistake shall be stated with particularity' applies to civil

10    RICO fraud claims."  *Pacific Recovery Solutions v. United Behavioral Health*, 481

11    F. Supp. 3d 1011, 1026 (N.D. Cal. 2020).  Union Defendants argue Plaintiff has

12    not sufficiently pleaded the predicate offense of wire fraud and the existence of an

13    enterprise to sustain a RICO claim.

14        *1.  Wire Fraud*

15        Wire fraud in violation of 18 U.S.C. § 1343 can serve as a predicate offense

16    for a RICO claim.  *Id.* at 1028. Wire fraud requires a showing that the defendant

17    (1) formed a scheme to defraud, (2) used the United States wires in furtherance of

18    the scheme, and (3) did so with a specific intent to deceive or defraud.  *Id.*

19    "Alleged violations of RICO predicated on fraudulent communications . . . are

20    subject to Rule 9(b), which requires that the plaintiff state the time, place, and

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 16

specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* (internal quotation marks omitted).  Additionally, the "specific intent to deceive or defraud" requires a showing of a scheme that is "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Sanville v. Bank of American Nat. Trust & Savings Ass'n*, 18 Fed. Appx. 500, 501 (9th Cir. 2001).  Intent is shown by examination of the scheme itself.  *Id.*

Here, there are sufficient facts from which the Court can infer the time and place of the alleged wire fraud.  *See* ECF No. 1 at 8, ¶ 53; at 11–12, ¶¶ 78–80. However, there are no facts from which the Court can infer the existence of a scheme with an intent to deceive.  Plaintiff does not identify any facts indicating Union Defendants directed its employees to forge Plaintiff's signature, or that Union Defendants even knew of the alleged forgery when the membership card was transmitted.  Plaintiff's argument that she cannot know this information is irrelevant; the Rule 9(b) heightened pleading requirements apply to allegations of wire fraud.  *Pacific Recovery Solutions*, 481 F. Supp. 3d at 1028.  Thus, where a plaintiff fails to plead the detailed factual allegations required for a RICO claim predicated on wire fraud, as is the case here, courts will find the claim untenable.

Plaintiff's inclusion of three other instances of alleged forgery cannot save the deficiencies in the pleadings.  *See* ECF No. 1 at 12–14, ¶¶ 85–102.  At best,

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ~ 17

Plaintiff describes three additional circumstances in which union employees, acting on their own accord, filled in individuals' names or signatures while conducting routine union membership solicitations.  Plaintiff has not alleged any facts indicating Union Defendants directed or even knew of those alleged forgeries. Without allegations that Union Defendants participated in or directed the forgeries, the Court cannot infer the existence of a scheme with the intent to defraud. Accordingly, Plaintiff has not sufficiently pleaded the requisite facts to sustain a RICO claim predicated on wire fraud.

### 2. Enterprise

There are two types of associations that meet the definition of "enterprise" for the purposes of a RICO claim.  *Shaw v. Nissan North America, Inc*., 220 F. Supp. 3d 1046, 1053 (C.D. Cal. 2016).  The first is comprised of legal entities, such as corporations and partnerships.  *Id*.  The second is an "associated-in-fact enterprise," which is defined as "any union or group of individuals associated in fact although not a legal entity."  *Id*. (quoting *United States v. Turkette*, 452 U.S. 576, 581–82 (1981)). The existence of such an enterprise is established with "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *Id*. (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).  "An association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 18

within the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. at 1053–54. The parties here address only the purpose and relationship elements.

Courts have routinely declined to find the existence of a RICO enterprise between entities carrying out ordinary commercial activities. *See, e.g.*, *Shaw*, 220 F. Supp. 3d at 1053–58; *Robins v. Global Fitness Holdings*, LLC, 838 F. Supp. 2d 631, 651–53 (N.D. Ohio 2012); *Juberlirer v. MasterCard Intern., Inc.,* 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009). There is no consensus among courts as to which structural element of the enterprise definition must fail in order to find routine commercial activities outside the scope of RICO liability. The Ninth Circuit's analysis of the common purpose element in *Odam v. Microsoft Corporation*, 486 F.3d 541, 549 (9th Cir. 2007) is instructive. There, the common purpose of the enterprise was to increase the number of people using Microsoft's internet service by offering Best Buy customers a free MSN internet trial subscription. *Id*. at 543. When Best Buy swiped a customer's credit card during the sale of merchandise, it sent the credit card and customer information to Microsoft. *Id*. Microsoft would then create an unauthorized customer account and, if the customer did not cancel the account before the end of the trial period, Microsoft would begin billing the account without permission. *Id*. Even though the common purpose was legitimate, the

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ~ 19

means by which the purpose was achieved were fraudulent, which supported a

RICO claim.  *Id*. at 543.

It appears Plaintiff attempts to describe a similar scenario.  Plaintiff argues

Union Defendants share a common legal purpose in withdrawing dues payments,

but that fraudulent means are used to achieve that purpose.  ECF No. 25 at 22.

However, unlike *Odam*, where the plaintiff established a systematic scheme of

creating unauthorized accounts and billings, Plaintiff here has described only four

incidents of alleged fraudulent activity.  Plaintiff does not assert what knowledge

Union Defendants possessed of the forged signatures or that they directed

employees to forge signatures to achieve a certain purpose.  Setting aside

Plaintiff's legal conclusions regarding the existence of an enterprise, what remains

are merely allegations that Union Defendants are associated in a manner that is

directly related to their business activities: collecting dues and making political

contributions.  *See Shaw*, 220 F. Supp. 3d at 1056.  Four seemingly unrelated

incidents of forged signatures are insufficient to establish the existence of a

common purpose under the definition of a RICO enterprise.

The relationship element of a RICO enterprise fails for similar reasons.  The

Complaint alleges the fraudulent activity was carried out by SEIU 775's

employees; SEIU International is mentioned only in a cursory manner.  See ECF

Nos. 1 at 22, ¶¶ 143–44; 25 at 22–23 n.1.  Plaintiff does not explain what role

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 20

SEIU International played in the enterprise, nor does she allege there was an explicit agreement between Union Defendants to use forged signatures to obtain dues deductions.  "[A]llegations that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates are not enough to show membership in an enterprise."  *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1033 (C.D. Cal. 2011) (quoting *Boyle*, 556 U.S. at 947 n.4) (internal quotations marks omitted)).  The independent actions of a few employees are insufficient to support the existence of a relationship between Union Defendants for the purposes of a RICO enterprise.

The Court finds Plaintiff has failed to sufficiently plead the predicate offense of wire fraud and the existence of an enterprise to sustain a RICO claim. Consequently, Union Defendants are entitled to judgment on the pleadings as to Count IV.  The claims are dismissed with prejudice, as amendment would be futile.

## C.  Supplemental Jurisdiction

A federal court has supplemental jurisdiction over pendent state law claims to the extent they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).  "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together."  *Bahrampour v. Lampert*,

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ~ 21

356 F.3d 969, 978 (9th Cir. 2004) (citation omitted).  Once the court acquires

supplemental jurisdiction over state law claims, § 1367(c) provides that the court

may decline to exercise jurisdiction if

> (1) the claim raises a novel or complex issue of State law, (2) the
> claim substantially predominates over the claim or claims over which
> the district court has original jurisdiction, (3) the district court has
> dismissed all claims over which it has original jurisdiction, or (4) in
> exceptional circumstances, there are other compelling reasons for
> declining jurisdiction.

28 U.S.C. § 1367(c).  Indeed, "[i]n the usual case in which all federal-law claims

are eliminated before trial, the balance of factors . . . will point toward declining to

exercise jurisdiction over the remaining state-law claims."  *Carnegie–Mellon Univ.*

*v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as*

*stated in Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010); *see*

*also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

 Having dismissed all federal law claims in this matter, the Court declines to

exercise jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3);

*Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (finding that a district court did

not abuse its discretion by declining to exercise supplemental jurisdiction over the

remaining state law claims when federal claims were dismissed).  The parties will

not be prejudiced by the Court's decision to decline jurisdiction.  Formal discovery

in this federal case has not begun, so if Plaintiff chooses to refile her state law

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 22

claims in state court, she will not be prejudiced.  Further, the period of limitation

for Plaintiff's remaining state law claims is tolled for thirty days after the claims

are dismissed unless Washington law provides for a longer tolling period.  *See* 28

U.S.C. § 1367(d).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. State Defendants' Motion to Dismiss (ECF No. 20) is **GRANTED**.  The claims asserted against Defendants Don Clintsman and Governor Jay Inslee in Plaintiff's Complaint (ECF No. 1) are **DISMISSED with prejudice.**

2. Union Defendants' Motion for Judgment on the Pleadings (ECF No. 22) is **GRANTED**.  The claims asserted against Service Employees International Union Local 775 and Service Employees International Union are **DISMISSED with prejudice.**

3. Any remaining state law claims are **DISMISSED without prejudice**.

The District Court Executive is directed to enter this Order, enter judgment

accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED March 4, 2022.



THOMAS O. RICE
United States District Judge

ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS AND
GRANTING UNION DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS ~ 23